# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

MATTHEW CORDOVA,

      Plaintiff,

v.                                                                        Civ. No. 20-524 KK/SCY

VILLAGE OF CORRALES *et al.,*

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants' 12(b)(6) Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof (Doc. 16) ("Motion"), filed July 1, 2020. Plaintiff filed a response in opposition to the Motion on July 15, 2020, and Defendants filed a reply in support of it on July 24, 2020.  (Docs. 22, 26.)  The Court, having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, FINDS that the Motion is well taken and should be GRANTED and that Plaintiff's Complaint Under 42 U.S.C. § 1983 for Violation of Civil Rights (Doc. 1) ("Complaint") should be DISMISSED WITHOUT PREJUDICE.

## I.  Factual Background and Procedural History

In his Complaint, Plaintiff Matthew Cordova alleges the following.[1]  Plaintiff began operating a construction business on his parents' residential property in Corrales, New Mexico, in 2004.  (Doc. 1 at 2.)  In 2007, a Planning and Zoning Administrator for Defendant the Village of Corrales ("Village") told Plaintiff that he "needed to apply for a Home Occupation Permit . . . to

---

[1] Because Defendants bring their Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will decide it based on the allegations in the Complaint, except as otherwise noted.  *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

lawfully operate his business" on the property.  (*Id.*)  Plaintiff applied for and obtained the requisite Home Occupation Permit ("HOP") that year, and "continuously operated his business, including the storage of vehicles and equipment necessary for such operation, on the [p]roperty without objection by the Village" until June 2018.  (*Id.* at 2-3.)

On June 8, 2018, however, the Village revoked Plaintiff's HOP, on the ground that Plaintiff's storage of business vehicles and equipment on the property violated the Village's zoning ordinances.  (*Id.* at 3.)  The Notice of Revocation ("Notice") stated in pertinent part that

> [u]nder Village administrative procedures, you may appeal the revocation of your home occupation permit to the Village Administrator, Suanne Derr.  If you wish to appeal this decision please submit your notice of appeal, in writing, to the Village Clerk, Shannon Fresquez, no later than ten (10) business days after the date of this letter.  Otherwise, the revocation is final.[2]

(Doc. 22 at 12.)  The Notice included no other information about how to appeal the revocation. (*Id.* at 11-12.)  It was on Village of Corrales Planning and Zoning Department letterhead, signed by Building Official Manuel L. Pacheco, and copied to, *inter alia*, Defendant Suanne Derr.  (*Id.* at 12.)

On June 15, 2018, Plaintiff mailed a document entitled "Appeal Notice Against the Revocation of My Home Occupation Permit" to Defendant Derr.[3]  (Doc. 1 at 3, 7-8.)  According to the Corrales Code of Ordinances, "[a] proper appeal" of a Planning and Zoning Department decision "shall stay all proceedings in the action unless [the Department] determines that a stay will cause imminent peril to life or property."  Corrales Code of Ord. § 18-49(d); (Doc. 1 at 3.) Nevertheless, on June 22, 2018, the Village issued a "First Notice of Violation" to Plaintiff as a result of the revocation of his HOP.  (Doc. 1 at 3.)

---

[2] Plaintiff quoted the Notice in his Complaint and attached a copy of it to his response to Defendants' Motion.  (Doc. 1 at 3; Doc. 22 at 11-12.)

[3] Plaintiff attached a copy of this document as an exhibit to his Complaint.  (Doc. 1 at 7.)

Plaintiff's counsel sent a letter to the Village on June 27, 2018, pointing out that Plaintiff had submitted an appeal and contending that the First Notice of Violation was therefore premature. (*Id.* at 3-4.) Defendant Derr responded on July 2, 2018, stating in pertinent part that

> [n]o formal appeal has been filed with the Village regarding the revocation. The time to file an appeal and pay the applicable filing fee has passed. . . . The revocation stands and [Plaintiff] is required to cease and desist any/all business activity and remove all evidence of the business from the property.[4]

(*Id.* at 4, 9.)

On July 30, 2018, the Village filed a criminal complaint against Plaintiff in Corrales Municipal Court, alleging violations of Section 18-45(c), the Village ordinance governing HOPs. (*Id.* at 4.) At a hearing regarding the criminal complaint, "the Municipal Judge" told Plaintiff "that he could resubmit his appeal to the Village."[5] (*Id.*) Plaintiff did so on October 12, 2018, via a letter from his attorney to the Village Council[6] and a form Application for Zoning Appeal.[7] (*Id.* at 4, 11-16.) This time, Plaintiff also paid a filing fee of $100. (*Id.* at 4, 16, 18.) In her October 17, 2018 response, Defendant Derr stated that

> [u]nder Section 18-49(b) . . . an appeal of the revocation of [Plaintiff's] HOP must have been submitted within twenty (20) days of the revocation and [Plaintiff] must have paid the applicable filing fee. . . . While [Plaintiff] submitted a written appeal of the revocation of his HOP, he failed to pay the applicable fee and in doing so,

---

[4] Plaintiff attached a copy of Defendant Derr's July 2, 2018 letter as an exhibit to his Complaint. (Doc. 1 at 9-10.) In the letter, Defendant Derr claimed to have "attached the relevant section of our ordinance regarding the right of appeal for your reference." (*Id.* at 9.) However, it appears that she attached Section 18-171, which governs appeals of decisions under Article V, regarding "Terrains and Storm Water Management." (*Id.* at 10); Corrales Code of Ord. § 18-171(a). The correct provision appears to be Section 18-49, which governs appeals of decisions under Article II, regarding "Zoning." Corrales Code of Ord. § 18-49(a).

[5] Defendants represent, and Plaintiff does not dispute, that these criminal proceedings have since been stayed pending resolution of a state court action Plaintiff filed challenging the validity of the Village ordinance that he allegedly violated. (Doc. 16 at 1-2.)

[6] The October 12, 2018 letter is actually addressed to the "Village of Corrales Counsel"; however, from context, it is clear that Plaintiff's attorney intended to address it to the Village Council. (*See* Doc. 1 at 11-15.)

[7] Plaintiff attached copies of his attorney's October 12, 2018 letter and his form Application for Zoning Appeal as exhibits to his Complaint. (Doc. 1 at 11-16.)

failed to perfect his appeal. . . .  [A]ny appeal not filed pursuant to the requirements shall not be considered by the Governing Body.[8]

(*Id.* at 17-18.)  Defendant Derr thus informed Plaintiff's attorney that "the HOP remains revoked" and "[t]here can be no further appeal" of the revocation.  (*Id.* at 18.)

At no relevant time did the Village post the applicable filing fee in its offices.  (*Id.* at 4.) Moreover, "[d]espite receiving Plaintiff's timely appeal, at no time within the time permitted for appeal did the Village tell Plaintiff that he needed to submit a filing fee."  (*Id.*)  Also, Defendant Derr testified in Corrales Municipal Court that "she did not know where one could find a published list of applicable fees or where one would look to find the fee charged for filing an appeal."  (*Id.*)

On June 1, 2020, Plaintiff filed this civil action, asserting claims under 42 U.S.C. § 1983 against the Village and Defendant Derr in her official capacity as Village Administrator.  (Doc. 1 at 1, 5; Doc. 22 at 5.)  In his Complaint, Plaintiff alleges that Defendants violated his Fifth and Fourteenth Amendment procedural due process rights under the United States Constitution "[b]y failing to provide [him] with accurate information regarding his right to appeal their revocation of his . . . [HOP]."[9]  (Doc. 1 at 5.)  He seeks an order reinstating his HOP, an award of nominal and compensatory damages, and costs and fees.  (*Id.*)

Defendants filed the Motion presently before the Court on July 1, 2020.  (Doc. 16.)  In it, Defendants ask the Court to dismiss Plaintiff's claims against them, either with or without prejudice.  (*Id.* at 9.)  Plaintiff responded in opposition to the Motion on July 15, 2020, and Defendants replied in support of it on July 24, 2020.  (Docs. 22, 26.)  For the following reasons,

[8] Plaintiff attached a copy of Defendant Derr's October 17, 2018 letter as an exhibit to his Complaint.  (Doc. 1 at 17-18.)  The "Governing Body" to which Defendant Derr referred is the Village Council.  Corrales Code of Ord. § 2-56.

[9] In their reply, Defendants argue that "Plaintiff does not allege the violation of any federal right.  At best, Plaintiff alleges violation of State law."  (Doc. 26 at 2.)  However, the right to procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution is plainly a federal right.

4

the Court finds that Defendants' Motion is well-taken and should be granted, and that Plaintiff's Complaint should be dismissed without prejudice to Plaintiff's ability to file a motion for leave to file an amended complaint within thirty (30) days of entry of this Order.

## II. Analysis

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Walker*, 947 F.3d at 1249. "The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1234 (10th Cir. 2020).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quotation marks omitted).

"In evaluating a motion to dismiss," courts may consider not only the factual allegations in the complaint, "but also the attached exhibits and documents incorporated into the complaint by reference." *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). Courts may also consider documents not attached to or specifically incorporated into the complaint without converting the motion to one for summary

judgment if:  (1) the complaint refers to the documents; (2) the documents are central to the plaintiff's claim; and, (3) the parties do not dispute their authenticity.  *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999); *Hill v. Vanderbilt Capital Advisors, LLC*, 834 F. Supp. 2d 1228, 1247 (D.N.M. 2011).  Finally, on a Rule 12(b)(6) motion, courts may take judicial notice of "facts which are a matter of public record."  *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *Hill*, 834 F. Supp. 2d at 1247.

In their Motion, Defendants argue that the Court should dismiss Plaintiff's Complaint because it fails to include sufficient facts to state either a procedural due process claim or a claim for municipal liability under 42 U.S.C. § 1983.[10]  (Doc. 16 at 3-4, 6-9.)  The Court will consider whether Plaintiff has sufficiently stated each type of claim in light of the allegations in his Complaint, the documents attached thereto, and the June 8, 2018 Notice of Revocation attached to Plaintiff's response to Defendants' Motion, (Doc. 22 at 11-12), which is referred to in the Complaint, central to Plaintiff's claims, and of undisputed authenticity.  *Prager*, 180 F.3d at 1189; *Hill*, 834 F. Supp. 2d at 1247.

## A.    Plaintiff's Procedural Due Process Claims

To determine whether a plaintiff has stated a procedural due process claim, a court must conduct a "two-step inquiry."  *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).  First, the court must determine whether the plaintiff has alleged the deprivation of a liberty or property interest that due process

---

[10]   In their Motion, Defendants also argue that the Court should dismiss Plaintiff's claim against Defendant Derr because she is entitled to qualified immunity.  (Doc. 16 at 5-6.)  However, in his response, Plaintiff points out that he has sued Defendant Derr in her official capacity only, (Doc. 22 at 5); and, in their reply, Defendants concede that "qualified immunity is not available as a defense."  (Doc. 26 at 3); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses."); *Starkey ex rel. A.B. v. Boulder Cty. Soc. Servs.*, 569 F.3d 1244, 1263 n.4 (10th Cir. 2009) ("Qualified immunity . . . is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities.").  Thus, Defendant Derr is not entitled to dismissal on the basis of qualified immunity.

protects.  *Riggins*, 572 F.3d at 1108; *Hennigh*, 155 F.3d at 1253.  If so, the court must then determine whether the "level of process" the plaintiff allegedly received was "appropriate." *Riggins*, 572 F.3d at 1108; *Hennigh*, 155 F.3d at 1253; *see also, e.g., Stears v. Sheridan Cty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007) ("To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded.").

Regarding the first step, "[w]hat constitutes a liberty or property interest within the meaning of the Fourteenth Amendment is not always easy to determine." *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012).  Moreover, Plaintiff does not expressly state whether he is alleging the deprivation of a liberty interest or a property interest.  (*See generally* Docs. 1, 22.) However, in other cases involving land use regulations, the Tenth Circuit has analyzed the potentially protectible interest at issue as one of property.  *See, e.g., Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210-13 (10th Cir. 2000); *Norton v. Vill. of Corrales*, 103 F.3d 928, 931–32 (10th Cir. 1996).

"The Supreme Court defines 'property' in the context of the Fourteenth Amendment's Due Process Clause as a 'legitimate claim of entitlement' to some benefit." *Hyde Park Co.*, 226 F.3d at 1210; *see Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.").  A legitimate claim of entitlement "arises not from the Due Process Clause of the Constitution itself, but is created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract." *Teigen v. Renfrow*, 511 F.3d 1072, 1079 (10th Cir. 2007) (quotation marks omitted).  However, though the underlying interest

is "generally created" by an independent source, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Id.*

To determine whether an independent source creates a legitimate claim of entitlement in the context of land use regulations,

> nearly all courts focus on whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs. Since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise, the question of whether an applicant has a property interest will normally be a matter of law for the court.

*Norton*, 103 F.3d at 931–32 (quotation marks omitted); *see also Hyde Park Co.*, 226 F.3d at 1210 ("In municipal land use regulation cases such as this, the entitlement analysis presents a question of law and focuses on whether there is discretion in the defendants to deny a zoning or other application filed by the plaintiffs.") (quotation marks omitted).  "To prevail," a plaintiff must "demonstrate that a set of conditions exist under state and local law, the fulfillment of which would give rise to a legitimate expectation" that he would receive or retain the property interest in question.  *Hyde Park Co.*, 226 F.3d at 1210.

"The second prong of the test for the deprivation of a procedural due process right," in turn, "asks whether the individual was afforded an appropriate level of process prior to the deprivation of the protected interest."  *Hennigh*, 155 F.3d at 1255–56; *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  Generally, a person with a protectible interest is entitled to pre-deprivation notice and an opportunity to be heard.[11]  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *see*

---

[11] However, "where a [municipality] must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause."  *Gilbert v. Homar*, 520 U.S.

*also Hulen v. Yates*, 322 F.3d 1229, 1248 (10th Cir. 2003) ("The essential requirements of due process are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement.") (ellipses omitted).

> For more than a century the central meaning of procedural due process has been clear:  Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.  It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner.  These essential constitutional promises may not be eroded.

*Hamdi v. Rumsfeld*, 542 U.S. 507, 533 (2004) (citations and quotation marks omitted).

Regarding the "notice" requirement in particular, the Supreme Court has long held that "[a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  "[P]rocess which is a mere gesture" and not reasonably designed to actually convey the information required "is not due process."  *Id.* at 314.  Thus, for example, courts have held that certain "misleading" notices violated due process requirements.  *See, e.g.*, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990); *Walje v. Shalala*, No. CIV.A. 93-2483-EEO, 1994 WL 477254, at *2 (D. Kan. Aug. 1, 1994); *United States v. Bryan*, 263 F. Supp. 895, 898-900 (N.D. Ga. 1967).

Nevertheless, "due process is flexible and calls for such procedural protections as the particular situation demands."  *Morrissey*, 408 U.S. at 481.

---

924, 930 (1997).  "Additionally, a plaintiff is not entitled to an *extensive* or *formal* pre-[deprivation] hearing if there are adequate post-[deprivation] procedures."  *Hennigh*, 155 F.3d at 1256 (emphases added).

> To determine what process is constitutionally due, we have generally balanced three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest.

*Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1192 (10th Cir. 2006) (citations and quotation marks omitted). "[T]he timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

Defendants argue that the Court should dismiss Plaintiff's Complaint because it fails to state a valid procedural due process claim. (Doc. 16 at 6-8.) However, neither side has addressed factors critical to the Court's resolution of this issue. With respect to the legal question of whether Plaintiff had a protectible property interest in his HOP, neither side has addressed whether Plaintiff had a legitimate claim of entitlement to the HOP or whether Village officials had discretion to grant, deny, or revoke it, and, if so, the nature and degree of that discretion.[12] *Hyde Park Co.*, 226 F.3d at 1210; *Norton*, 103 F.3d at 931–32. And, with respect to whether the process Plaintiff received was constitutionally adequate, neither side has even attempted to apply the factors listed in *Kirkland* or discuss whether the content of the Notice appropriately accommodated the parties' competing interests.[13] *Goss*, 419 U.S. at 579; *Kirkland*, 464 F.3d at 1192. The Court is not inclined to resolve such nuanced and weighty issues without the parties' input.

---

[12] Plaintiff's allegations that he applied for and was granted the HOP in 2007 and operated his business pursuant to it without objection from the Village until 2018 certainly allow for the possibility that he had a legitimate claim of entitlement to the permit. (*See* Doc. 1 at 2-3.) However, on the facts alleged, it is also possible that Village officials had discretion to revoke the permit or that Plaintiff could not meet the nondiscretionary requirements to retain it. (*See generally id.*) On its face, then, the Complaint does not establish Plaintiff's legitimate claim of entitlement so conclusively that argument from the parties is unnecessary. *Cf. Norton*, 103 F.3d at 931 ("Because plaintiffs did not establish their entitlement to plat approval, their due process claims were properly dismissed on the pleadings.").

[13] Again, it is certainly possible that Plaintiff's interest in retaining his HOP, the risk that he would be erroneously deprived of it without more complete and accurate information about how to appeal its revocation, and the probable value of providing such information would outweigh the Village's countervailing interests. *Kirkland*, 464 F.3d at

Defendants also argue that the Court should dismiss Plaintiff's Complaint because Plaintiff was not entitled to pre-deprivation process and waived his procedural due process rights by failing to avail himself of adequate post-deprivation remedies.  (Doc. 16 at 5, 8-9; Doc. 29 at 2-3.)  As to the first point, post-deprivation process satisfies due process where a municipality "must act quickly, or where it would be impractical to provide predeprivation process."  *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).  Here, however, neither Plaintiff nor Defendants have alleged or argued the existence of such circumstances.

As to the second point, it appears at least debatable whether Plaintiff waived his right to process by choosing not to pursue available post-deprivation remedies.  *See Kirkland*, 464 F.3d at 1195 (finding that the plaintiff waived his procedural due process claim challenging the adequacy of post-deprivation process where he could have filed a grievance challenging the deprivation but "chose not to do so").  In his Complaint, Plaintiff alleges that Village officials' unconstitutional conduct prevented him from perfecting his appeal and exhausting his administrative remedies at the municipal level.  (*See generally* Doc. 1.)  As such, he may well have been barred from pursuing the post-deprivation remedy on which Defendants' waiver argument relies, *i.e.*, a direct appeal to state district court under N.M. Stat. Ann. §§ 3-21-9 and 39-3-1.1.  *See Smith v. City of Santa Fe*, 2007-NMSC-055, ¶ 26, 142 N.M. 786, 794, 171 P.3d 300, 308 (plaintiff proceeding under N.M. Stat. Ann. § 39-3-1.1 must usually "exhaust any administrative remedies provided by the municipality before seeking judicial review").  Again, however, neither party has addressed this question, and the Court is not inclined to resolve it without the parties' input.

Fortunately, the Court need not decide whether Plaintiff's Complaint alleges sufficient facts to state a procedural due process claim at this juncture, because, as discussed in Section II.B.,

---

1192.  However, on its face, the Complaint does not establish this so conclusively that argument from the parties is unnecessary.

*infra*, the Complaint plainly fails to allege sufficient facts to state a municipal liability claim under 42 U.S.C. § 1983 against either Defendant and must be dismissed on that basis.  For the moment, it is enough for the Court to observe that, considering the facts alleged in the Complaint in light of the applicable legal standards, Plaintiff may be able to state a procedural due process claim in an amended complaint.

**B.      Plaintiff's Municipal Liability Claims Under 42 U.S.C. § 1983**

In his Complaint, Plaintiff asserts his procedural due process claims against the Village, which is a municipality, and Defendant Derr in her official capacity as Village Administrator. (Doc. 1 at 1; Doc. 22 at 5.)  "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation marks omitted).  "Suits against [municipal] officials in their official capacity should . . . be treated as suits against the [municipality]."  *Id.*  Thus, to state a claim against either the Village or Defendant Derr, Plaintiff's Complaint must satisfy the requirements for municipal liability claims under 42 U.S.C. § 1983.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). Rather, for a municipality to be liable under Section 1983, "the action that is alleged to be unconstitutional" must be one that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or "visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id.* at 690–91 (quotation marks omitted); *see also Los Angeles Cty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[A] municipality cannot

be held liable solely for the acts of others, *e.g., solely* because it employs a tortfeasor.  But the municipality may be held liable when execution of a government's *policy or custom* inflicts the injury.") (emphases in original) (ellipses, citation, and quotation marks omitted).

Summarizing the complex body of law that has developed from *Monell*, the Tenth Circuit observed that an actionable municipal policy or custom

> may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[14]

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation marks and brackets omitted).  A municipal official is a "final policymaker" when her discretionary decisions are unconstrained by policies of another's making and are not subject to other municipal officials' review.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

As Defendants observe, Plaintiff's Complaint is devoid of any allegation that the claimed unconstitutional conduct at issue—*i.e.*, the failure to provide Plaintiff with adequate notice of his right to appeal the revocation of his HOP—resulted from a municipal policy or custom.  More particularly, the Complaint includes no allegation that the claimed inadequate notice resulted from:

---

[14] In their reply, Defendants argue that a plaintiff must always allege "deliberate indifference" to state a municipal liability claim under Section 1983.  (Doc. 26 at 3-4.)  In fact, however, only when a plaintiff seeks to establish municipal liability "on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights" must the plaintiff "demonstrate that the municipal action was taken with deliberate indifference as to its known or obvious consequences."  *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997) (quotation marks omitted); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quotation marks omitted); *cf. Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) ("[W]hen an official municipal policy itself violates federal law, issues of culpability . . . are straightforward; simply proving the existence of the unlawful policy puts an end to the question.").

(1) a formal regulation or policy statement; (2) a widespread practice so permanent and well settled as to constitute a custom or usage with the force of law[15]; (3) the decision of an employee with final policymaking authority[16]; (4) a final policymaker's ratification of a subordinate's decision and the basis for it; or, (5) the failure to adequately train and supervise employees, where that failure resulted from deliberate indifference to the constitutional injuries that could result.

In short, Plaintiff's Complaint fails to include factual content that would allow the Court to draw the reasonable inference that either the Village, as a municipality, or Defendant Derr, as a Village official sued in her official capacity, is liable for the alleged unconstitutional conduct under 42 U.S.C. § 1983. *Iqbal*, 556 U.S. at 678; *Walker*, 947 F.3d at 1249. For these reasons, Plaintiff's Complaint fails to state a facially plausible claim of Section 1983 municipal liability against either of these Defendants and must be dismissed.

However, in light of the allegations in Plaintiff's Complaint, as well as the documents attached thereto and referenced therein and the legal standards discussed in this Memorandum Opinion and Order, the Court cannot say that granting Plaintiff leave to amend would be futile. The Court will therefore dismiss Plaintiff's Complaint without prejudice to his ability to file a motion for leave to file an amended complaint that complies with the requirements of Federal Rule

---

[15] Plaintiff does allege that the Village failed to post the applicable filing fee in its offices and that Defendant Derr did not know where one could look to find it. (Doc. 1 at 4.) However, he does not allege that the Village *customarily* failed to inform residents of the applicable filing fee, *e.g.*, by excluding that information from its notices of revocation. (*See generally id.*) Nor can the Court infer such a custom from the allegation that the Village failed to include that information in the Notice Plaintiff received.

[16] For example, Plaintiff's Complaint includes no allegations regarding whether the person who allegedly provided him with constitutionally inadequate notice was a final policymaker with respect to the alleged unconstitutional conduct at issue. *See McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 (1997) ("Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."). Indeed, in his Complaint, Plaintiff does not even identify who this person was. (*See* Doc. 1 at 3 (alleging that "the Village" revoked Plaintiff's HOP and issued the contested Notice).)

of Civil Procedure 15 and Local Civil Rule 15.1. *Cf. Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012) ("[D]ismissal with prejudice is appropriate where the complaint fails to state a claim and granting leave to amend would be futile.") (brackets, ellipses, and quotation marks omitted).

### III.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1.      Defendants' 12(b)(6) Motion to Dismiss Plaintiff's Complaint and Memorandum in Support Thereof (Doc. 16) is GRANTED;

2.      Plaintiff's Complaint Under 42 U.S.C. § 1983 for Violation of Civil Rights (Doc. 1) is DISMISSED WITHOUT PREJUDICE; and,

3.      Plaintiff may file a motion for leave to file an amended complaint in this action within thirty (30) days of entry of this Order.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent